Thank you, your honor. My name is Sean Rogers. I, if it pleases the court, I'm here on behalf of appellant Mr. Keith, or Professor Keith Fogg. This is the second time that this case has risen to the circuit court, the first one. It was remanded to the district court for an in-camera review, as this court, I'm sure, is aware. The appeal concerns the FOIA request of Professor Fogg for five redacted paragraphs of the IRM, 21.1.3.3. These five redacted paragraphs have to do with the authentication process for the third-party, basically a third-party tax professional that calls into the IRS and asks for a taxpayer, their client's information. It's to confirm their identity. The IRS has withheld these five paragraphs, which they say indicate heightened situation where risk of identity theft is at a greater standard. And then they have withheld those under Exemption 70. And Exemption 70 has to do with law enforcement investigations and techniques and procedures for law enforcement investigations and prosecutions. It is our position that the district court, let me back up, the district court affirmed the IRS after an in-camera review from, ordered by this court, the district court affirmed the IRS' withholding and indicated that it was protected from disclosure under Exemption 70. We disagree with that. We believe FOIA is there for transparency, for disclosure. It's a remedial statute. In the exemptions, there are nine of them. They are intended to be construed narrowly. The district court's construction of Exemption 70 here, where basically it withholds a portion of an authentication procedure, an administrative authentication procedure, risks swallowing the whole of the FOIA purpose with its exemption. So how do we exactly, so last time when we reviewed this, we had really almost a mistake or an erroneous assumption in one of the affidavits. This time around, it's a little different situation where we haven't actually seen, to my understanding, what the district court saw in what we didn't see. I mean, how would we reverse that? Certainly. Well, I mean, we've articulated one of the issues in FOIA cases, right? In some respect, you're, I guess not in some respect, in every respect. Let me, sorry, I just wanted to back up for a moment. I wanted to reserve two minutes for rebuttal. That's within your 15 percent. Yes. The answer to your question is, you obviously, you nor I have seen what's in the redacted paragraphs. We do have to rely in part on what the Dongeny Declaration indicates, and that's the IRS's declaration that talks about these heightened scrutiny. The one thing that I think is an important note in that regard is that it's, on its terms alone, the declaration indicates that it is part of the same administrative procedure. That, yes, that there is a certain situation where these non-standard scenarios happen, which honestly is somewhat conclusory in the declaration. It doesn't describe it all that well. But that the purpose is the same, to identify your identity. Are you who you say you are? And that purpose is the same as the rest of the administrative procedure. I think an important step, and what we're asking this court to do here, is really define the scope of Exemption 7-8. So, yes, in some respect, that has to do with what's in the declaration. But in some respect, it has to do with really what the text of the statute says. And I mean, a prior panel of this court did say, and two honors were part of that, is how do you link what is clearly a preventative undertaking by the IRS to the text of the Exemption 7-8? We would argue that you cannot. Because, yes, we do not dispute that there is a prevention aspect here, as in Justice Alito articulated in Milner, and several other courts of appeal have certainly found that that is part of the threshold requirement, basically, of the FOIA exemptions here. 7-E, so let me back up. There are two parts. There's a threshold requirement. Is this done for a law enforcement purpose? And that's where the preventative issue comes in. I think what the IRS and the district court has glossed over is that it doesn't fit into the second part. It isn't investigatory. It's an administrative process designed to shield and prevent the disclosure of taxpayer information to people who should not have it. But it is not the same as investigating, like, for example, a case that we cited in the prior appeal was this Knight decision that was since overturned by the Second Circuit. Now, I think I would note at the beginning that the Second Circuit isn't binding authority here, but certainly the analysis could be considered persuasive. There you have, basically, a U.S. CIS immigration officer investigating and using these TRIG questions to assess a visa application and whether they are a terrorist threat. And there you're actually doing an investigation. These questions go to the point of whether this person has ties and supported terrorism. And I would argue, in part, in the past. What we're talking about here in the IRM 21.1.3.3 has to do with preventing the disclosure of information and identifying who you are that you say you are. Or preventing a crime. I mean, potentially it's a crime with identity theft. And so, the argument could be they're investigating in the sense that they're searching, they're using techniques that you would use in an interview in a police station or something like that in order to prevent the crime ahead of time. Why isn't that part of the investigation as well? Well, so, I think the short answer is we're on a spectrum here. And you have to draw a line as to what constitutes simply just an administrative process that prevents something from happening versus what is an investigation, more or less, of a crime either in progress or after it has happened. I think there is a temporal issue here. Because if you want to construe something that is clearly about authenticating someone's identity, yes, it does prevent criminal activity in the sense that it would prevent identity theft or fraud of some type. You know, it could be a broad spectrum of things. Counsel, I know I'm stepping on the question, but this is not just identity theft. It's a felony on the IRS. It's a felony on the very person on the phone. It's a felony on the supervisor, perhaps. And it's a felony on the people getting the information. This is identity theft on steroids. Do you agree? I wouldn't disagree with what Your Honor said. Yeah, but identity theft is kind of demeaning to what's going on here, I think. I certainly would not disagree with what Your Honor said. And we're not talking about the severity of what's at risk here. That, you can go back if you need to. The point that we're trying to make here is that you, sorry. Well, I was just going to ask, you know, maybe a better example than pulling somebody in a conference room is, you know, in drug investigations, people go undercover. There may be certain procedures and guidelines for that. And so if you're out questioning drug dealers or whatever to try to get at the root of the conspiracy, I think there's no question that in the plain language, that's investigatory, like the plain language of the term. And I'm not sure that the distinction here is all that compelling because they're kind of doing the same thing, except for not physically looking at somebody, asking them questions, or asking them the questions over the phone. Well, I think that certainly there is a distinction. It's up to you to decide whether that is significant enough. I think that you, so there will be some indicia depending on whether, where it falls on the spectrum. I mean, if we look here in the IRM itself, it says that there are customer service representatives that are doing this. The initial questions that are asked by everybody, the initial inquiry is precisely what, it applies to everybody calling it. Every IRS professional that calls in, or excuse me, every tax professional that calls in who's representing, you know, a taxpayer is subject to this. And at some point, there's these nonstandard situations, which again, I would say is somewhat conclusory in the affidavit from Donning. We don't really understand exactly what triggers that. Is it simply that the IRS professional forgets the CAF number? We don't know. I mean, if that's true, you know, if you're analogizing it to an attorney, I mean, if you forget the case number, is that a nonstandard situation? Well, attorneys regulate it. Some people that have CAF numbers are not regulated. They are not CPAs. They are not governed by regulation. It's only passing an IRS exam. So does that make any difference? Well, I think what your Honor is going to is the importance that these people not forget the information. And we're not suggesting that that is not a bad thing. Well, but when you use attorney, that made me think other people are regulated. But the IRS has created its own, as you may know, lots of litigation on that, has created its own system of having tax preparers who get CAF numbers. So does that affect it or not? I don't think it necessarily affects the point that we're making. Only in that my point in using that example was that is that a nonstandard situation that would be indicative of identity theft or some greater situation? We don't really know. But it's not necessarily meaning that you're, like, for example, in your Honor's situation in, like, a drug context. Or in the Knight case where you're talking about terrorism. There's an investigation of a crime that has occurred here. We're still trying to – we're basically protecting somebody's personal information here through a shield more than we are investigating the crime itself. Would it make a difference, though, if let's say that the customer service representative transferred them to a law enforcement agent? So in the same questions, the exact same questions, but said, we're going to transfer you to a supervisor, which turns out to be a law enforcement agent. Would that make a difference in terms of meeting the exemption? Let me see if I understand your Honor's question correctly. When they transfer them, does that mean that basically that a law enforcement investigation – let me not use that word. Same facts, except for the law enforcement agent asks the follow-up questions. So the redacted paragraph is essentially conducted by the law enforcement agent. I think in my view that would make it a little bit different because structurally the IRM doesn't do that. There is a portion where it deals with investigations and where this would be transferred. That is not this paragraph. So I think, you know, just from a structural standpoint, I don't think the Dongeny Declaration would dispute that. This is conducted at this preliminary stage, and there isn't necessarily a view that it would be transferred at that point. I think it may be – I mean, I won't be speaking on a term, but I think it's possible that it would be transferred, you know, depending on the result of that point. And then at that point, maybe it would be different. But I do think an indicia of whether something is investigatory does determine – is in part, not totally, but in part determined by who is exactly doing that. I mean, if we're talking about a lower-level IRS customer service employee versus something like an internal revenue agent, I think there is a difference because there is – who is doing it is somewhat indicative of what the process itself is. And I would point out that the district court actually makes an error because it refers to an IRS agent in its opinion conducting that. But it didn't capitalize the age, right? But it didn't capitalize the age sometimes when it says agent? As you know, the IRS is careful to capitalize the age. I think it actually did capitalize the age. Okay. And you want to reserve time for rebuttal? Yes. I will take that. Thank you, Your Honor. Good morning. May it please the Court, Jana Bradley with the Justice Department. Please proceed, Ms. Bradley. Thank you very much, Your Honor. Here, the district court on remand, as instructed by this court, conducted an in-camera review of the five small portions of the IRM provision at issue here. And as an aid in determining whether or not the IRS properly withheld these under Exemption 7, the IRS provided the declaration of Supervisory Tax Analyst Donaghy. That affidavit is public. It exhaustively goes through the reasons for Exemption 7E and that, in fact, the provisions at issue here both had a law enforcement purpose, which I really don't think the appellants are challenging. They seem to agree that it's a proactive step to prevent crime like identity theft, criminal fraud, and, in fact, we're subject to penalties under 6103 if the IRS mistakenly discloses tax return information. And to that point, the Treasury General Inspector's report that's in the record explains that, you know, there was a concern whether or not the IRS was doing everything it needed to do to actually protect the confidential return information of the taxpayers. Counsel, I think you've made a compelling case that disclosing this information could jeopardize identity theft prevention. But this court doesn't write statutes and we don't make FOIA policy. We're supposed to construe the plain meaning of the statute and we're also supposed to construe the exemptions very narrowly. So here's my question. Isn't there a difference in meaning between law enforcement investigation, which was the language of the statute, and authentication of callers by customer service representatives? The government's answer to that is the two terms are reasonably the same. When, as Judge Strass pointed out, when somebody calls, and it's not just the IRS, call the Social Security Administration. They, if you forget your Social Security number or something, they do ask you a number of questions. And here again, to Counselor's point this morning, you know, what happens if they forget their CAF number? Well, you know, in fact, maybe somebody picked up the CAF number who shouldn't have the CAF number. So if that person calls the IRS and the IRS agent on the phone suspects that something's not right, that their suspicions aren't, that something is amiss, it's quite reasonable for the IRS agent to investigate slash research further whether or not that caller on the telephone is in fact who they say they are. And not only who they say they are, but they do have authorization to receive a specific taxpayer's return information. But do you think a person of ordinary understanding applying the plain English would think that that's a law enforcement investigation? Certainly. I mean, I think even as we cite cases with the State Department, again, they're conducting research investigation as to whether or not, you know, people are who they are, and that there's, you know, as in the one situation, any ties to terrorists. But again, I think the terms are reasonably interchangeable. And again, here the district court did find that it was an investigation relying not only on the language of the internal revenue provision itself, which specifically states its purpose is to avoid identity theft. Its purpose is to ensure that only callers who have the proper authorization get access to the taxpayer information. My concern is that given our duty on this court to construe the exemptions narrowly, that we've not come up with something where the exemption swallows the rule. Where's the outer boundaries of this? It seems to me that anything a government agency does could be construed as having a law enforcement purpose. So doesn't that allow the agency to withhold anything and everything? No, I don't think it does that. Again, here I think the difference is what we're withholding are those investigations done in very unique, specific situations. Again, that IRM provision lists a whole bunch of the questions that are fairly routinely asked of callers. And here, again, it was only the five small portions that come into play. So I don't think it applies to every caller. Someone could call, say, this is my CAF number, this is my address, this is my whatever. And again, whoever the IRS telephone assister is who said, boy, knew all the answers, checked all the boxes. You know, we're good. And that would show that the IRS conducted a reasonable investigation slash research just to make sure that, you know, we were properly speaking to the right person with respect to that taxpayer's authorization. So again, while FOIA is meant to be construed broadly, again, the exemptions are there. Congress came up with non-exemptions for a reason. And here, again, as counsel for the appellant, they don't challenge that it's a purpose and a law enforcement purpose. And we submit that the district court did correctly find that it was an investigation. And as I said, we cite our cases in the brief with Blackwell and ACLU of Michigan, you know, getting to, you know, targeting priorities, those exceptional situations. And again, it kind of brings us back to the beginning of this case. I mean, I haven't seen the provisions, the redactions at issue. Counsel for the appellant has. It was the district court. And the district court, as an aid in determining whether or not the government is burdened of showing that the exemptions were proper, relied on the affidavit of Donaghy. Appellant doesn't challenge that it was in good faith. And the government submits that it does a good job of explaining the specific situations where we go above and beyond typical situations. And again, nobody's, we don't even know what these are. But again, we think the district court properly at the direction of this court reviewed it in conjunction with the affidavit and that the government met its burden of showing. Why aren't the initial questions investigative? Because they're part of determining who the person is and preventing identity theft. So why don't they fall within the exemption as well? Well, and again, techniques and procedures, if they're commonly known, which we would submit, this is my name, this is my CAF number, this is my address. Those are common questions that, you know, you call any government agency. You know, you call your credit card company and they ask you for some basic information. We submit that those are separate and we never argued that they fall within 7Z's exemption. You know, you could say they're an investigation, but they're not a law enforcement investigation. Here these questions are going to whether or not the IRS assister on the phone suspects something's not right. You know, somebody's stumbling over questions. They don't have the proper answer to even those basic questions. And again, these are five small redactions. I mean, the IRS went back and went back and went back just to make sure that we released everything we could. And again, to get back to that Treasury General Inspector's report, I mean, it was pretty critical of the IRS for not doing everything it could to make sure that there were no violations of 6103. And the IRS, you know, to that end redacted these specific paragraphs. We submit that it's actually to protect third-party callers, to protect Professor Fogg's clients, and Professor Fogg just to make sure if somebody's calling, they are who they say they are. So in conclusion, we would just submit that the district court correctly held that the government demonstrated that Exemption 7E was applicable here. And we ask that this go around, that the court affirm that decision, please. Thank you for the argument. Thank you. Mr. Rogers. Thank you, Your Honors. I think the one thing that the counsel for the appellee mentioned is that, well, research is more or less interchangeable, that ties with terrorism are interchangeable with authentication procedures. We think that's not true. The interpretation that we're talking about here, the question this court has to answer, is whether even non-standard situations in an authentication process determine that you're in, whose identity, that you are who you say you are, falls within Exemption 7E that deals with the law, investigations and techniques and procedures for law enforcement investigations or prosecutions. No one's arguing about prosecutions here. So it deals with investigations. Is an authentication procedure investigatory? I mean, Your Honor indicated that, well, why aren't the other portions investigatory? Well, I mean, on their face, they would be investigatory, but they're just not well known. The problem that we're having here is that the IRS customer service agents, the Domini Declaration does not specify or even suggest that these service agents are doing anything that would be dramatically different from what is not redacted. Because if they were, he probably would be transferred somewhere else, but they're not. I think that the cases that this court cited, Morley and 100 Reporters, those are very distinct situations. They deal with background checks that deal with either CIA officers, people, employers, employment in the CIA, or specialized training from the State Department for national security reasons. You also look at Knight. I mean, that deals with terrorism. Terrorism is not interchangeable with the question of are you who you say you are. We don't disagree that there is a preventative function here, but we don't think that preventative function means that you have an investigation. There is a distinction, and Justice Alito indicated that distinction. There is a difference between a cop on a beat preventing crime and somebody who investigates the fact after the fact that a crime has occurred. And I'll close with this. The question here before the court is just how broad this statute should be construed. And thank you, Your Honors. Thank you. Thank both counsel for the argument. Case number 23-1620 is submitted for decision by the court. Ms. Greenwood.